IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN P. SENESE, | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| LIBERTY MUTUAL, Inc., | : | No. 13-5139 |
| Defendant. | : | |

MEMORANDUM

Schiller, J.                                                                                                            August 19, 2014

This Court conducted a jury trial on May 13, 2014 on John P. Senese's claim for damages against insurance provider Liberty Mutual, Inc. ("Liberty Mutual") after he was injured in a car accident. The jury found for Liberty Mutual. Senese now moves for a new trial on the grounds that the Court improperly limited the testimony of his expert witness, that the Court improperly limited Senese's testimony about the speed of another car, and that the jury's answers to special interrogatories were inconsistent. For the following reasons, the Court denies Senese's motion.

I.     BACKGROUND

Senese was injured in a car accident on September 2, 2009. His employer at the time of the accident, Star Plumbing, Inc., had an insurance policy with Liberty Mutual, and Senese was an insured under that policy. The parties disputed whether Senese was entitled to recover under the language of the policy.

Senese was injured when he collided with a parked car after making a left turn from West Avenue onto Jenkintown Road in Montgomery County, Pennsylvania. He claimed that the collision was caused by the negligence of another driver, who sped toward Senese on Jenkintown

Road as Senese was turning left. Senese claimed that he accelerated into his turn in order to avoid a collision with the other driver. That driver was never identified, and the Court will refer to him as the "unidentified motorist."

The insurance policy at issue provides that Liberty Mutual will pay "all sums the insured is legally entitled to recover as compensatory damages from the owner or driver of an uninsured motor vehicle." (Compl. Ex. A [Insurance Policy] at 120.) The policy further provides that an "uninsured motor vehicle" includes vehicles "[f]or which neither the driver nor owner can be identified." (*Id*. at 123.) To trigger coverage under the relevant provision, the uninsured motor vehicle must "[c]ause an accident resulting in bodily injury to an insured." (*Id*.) Senese claimed that he is entitled to damages under this policy because the unidentified motorist's negligence caused his accident. Because he would have been able to recover damages from the unidentified motorist under tort law, he argued, he may recover those damages from Liberty Mutual under the insurance policy. Liberty Mutual argued that it was not liable under the policy because Senese could not establish that an unidentified motorist existed; that any such motorist was negligent; or that any negligence by an unidentified motorist was a factual cause of Senese's accident.

At trial, both Senese and Liberty Mutual sought to present experts in accident reconstruction. The Court limited the testimony of both experts to statements about measurements at the scene of the accident and the posted speed limit. The Court also precluded Senese from testifying as to the exact speed of the unidentified motorist. The Court bifurcated the liability and damages portions of the trial, and the jury heard testimony only from Senese and Defense expert Steven Schorr. Schorr testified about measurements and the speed limit at the scene of the accident. (Trial Tr. 106-112.) In a special verdict form, the jury found that there was

an unidentified motorist, and that the unidentified motorist was negligent, but that the motorist's negligence was not a factual cause of any harm to Senese.

## II.   DISCUSSION

Pursuant to Federal Rule of Civil Procedure 59, "[t]he court may, on motion, grant a new trial on all or some of the issues—and to any party . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court . . . ." Fed. R. Civ. P. 59(a)(1). A court may order a new trial on various grounds, including if the court made a significant error of law to the prejudice of the moving party. *Maylie v. Nat'l R.R. Passenger Corp.*, 791 F. Supp. 477, 480 (E.D. Pa. 1992), *aff'd*, 983 F.2d 1051 (3d Cir. 1992). A court may also order a new trial if the jury's answers to special interrogatories are inconsistent, and there is no reasonable way for the court to harmonize these answers. *See Malley-Duff & Assocs., Inc. v. Crown Life Ins. Co.*, 734 F.2d 133, 145 (3d Cir. 1984); *Gentner v. Cheyney Univ. of Pa.*, Civ. A. No. 94-7443, 1996 WL 525323, at *4 (E.D. Pa. Sept. 17, 1996).

### A.   Exclusion of Proposed Testimony by Plaintiff's Expert

Senese argues that the Court erred in excluding most of the proposed testimony of his accident reconstruction expert, Steven W. Rickard, and in declining to conduct a *Daubert* hearing on the admissibility of that testimony. *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592 (1993). As noted above, the Court limited Rickard's testimony to measurements taken at the scene of the accident and the posted speed limit.

Expert testimony must meet three requirements to be admissible under Federal Rule of Evidence 702. *Calhoun v. Yamaha Motor Corp., U.S.A.*, 350 F.3d 316, 321 (3d Cir. 2003). First, the witness must be qualified to testify as an expert. Qualification requires that the witness

possess specialized expertise. *Id*. Second, the expert's testimony must be reliable. In other words, "the expert's opinion must be based on the methods and procedures of science rather than on subjective belief or unsupported speculation; the expert must have good grounds for his or her belief." *Id*. (quoting *Daubert*, 509 U.S. at 590). Technical or other specialized knowledge, in addition to scientific knowledge, may form the basis of the expert's opinion. Fed. R. Evid. 702(a). Third, the expert's testimony must be relevant for the purposes of the case and must assist the trier of fact. *Calhoun*, 350 F.3d at 321. The proponent of expert testimony has the burden of establishing all three requirements by a preponderance of the evidence. *Padillas v. Stork-Gamco, Inc.*, 186 F.3d 412, 418 (3d Cir. 1999). The Court excluded Rickard's testimony because it did not meet the second or third requirements of Rule 702.

Addressing the second requirement, the Third Circuit has directed courts to consider the following factors to determine whether expert testimony is reliable: "(1) whether a method consists of a testable hypothesis; (2) whether the method has been subject to peer review; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; (5) whether the method is generally accepted; (6) the relationship of the technique to methods which have been established to be reliable; (7) the qualifications of the expert witness testifying based on the methodology; and (8) the non-judicial uses to which the method has been put." *Pineda v. Ford Motor Co.*, 520 F.3d 237, 247-48 (3d Cir. 2008). These factors are neither exhaustive nor applicable in every case. *Id.* Indeed, expert testimony may be based on "experience alone—or experience in conjunction with other knowledge, skill, training or education." Fed. R. Evid. 702 advisory committee's note; *see also Schneider ex rel. Estate of Schneider v. Fried*, 320 F.3d 396, 406 (3d Cir. 2003). However, when an expert offers an opinion based on experience, "he must apply his experience reliably to the facts; his opinion

must be well-reasoned, grounded in his experience, and not speculative." *Roberson v. City of Phila.*, Civ. A. No. 99-3574, 2001 WL 210294, at *4 (E.D. Pa. Mar. 1, 2001); *see also* Fed. R. Evid. 702 advisory committee's note.

Rickard submitted two expert reports. The first report set forth Rickard's principal conclusions about the accident. The second report was a response to proposed testimony by Defense expert Steven Schorr and to a DVD produced by Schorr, which the Court excluded. Rickard's proposed testimony was based on the following sources of information: (1) Senese's deposition; (2) Senese's declaration; (3) answers to Senese's second set of interrogatories; (4) the police accident report; (5) photographs of the accident scene and the damaged vehicles; (6) Rickard's inspection of the accident site in April 2014, four-and-one-half years after the accident occurred; (7) measurements from "miscellaneous sources;" (8) specifications for Senese's van; (9) Schorr's expert reports; and (10) Schorr's DVD. (Pl.'s Mot. for New Trial [Pl.'s Mot.] Ex. E [First Rickard Report] at 1-2; *id*. Ex. F [Second Rickard Report] at 1.) Rickard did not inspect the vehicles involved in the collision, and he did not claim that there was any physical evidence of the accident at the scene. (First Rickard Report at 3.) The Court will discuss Rickard's proposed testimony in two parts. The Court will first discuss Rickard's statements about how and why Senese's accident occurred. The Court will then discuss Rickard's statements about reaction time and centrifugal force.[1]

---

[1] In addition to these two categories of testimony, Rickard's reports included a summary of the police accident report, a description of the accident site, information about the vehicle that Senese was driving, statements of law, excerpts from the Pennsylvania Driver's Manual, and responses to Schorr's reports and DVD. The parties stipulated to much of this testimony. (J. Pretrial Stip. ¶¶ 1-12.) A response to Schorr's reports was unnecessary because the Court limited Schorr's testimony to the same extent that it limited Rickard's testimony. Rickard's statements of law were inadmissible because those statements would have usurped the Court's role to explain the law to the jury. *See Berckeley Inv. Grp., Ltd. v. Colkit,* 455 F.3d 195, 217 (3d Cir. 2006).

*1.     Testimony about how Senese's accident occurred*

Rickard's first expert report stated the following conclusions: that "Mr. Senese has no responsibility for the occurrence of this accident;" that "Mr. Senese's actions were reasonable and appropriate;" and that "the collision in this case was caused by the actions of the unidentified motorist." (*Id*. at 12, 14.) The report offers no basis for these conclusions in scientific, technical or specialized knowledge. Rather, Rickard bases his conclusions on findings that could only have come from Senese's own statements: that Senese "stopped, looked, and proceeded into the intersection when it was safe to do so;" that Senese was driving at or under five miles per hour; that Senese was "presented with the sudden and unexpected appearance of the unidentified motorist;" that the unidentified motorist was driving "carelessly," "inattentively," and at a speed that was "too fast for conditions;" and that the unidentified motorist "forced [Senese] out of his planned turn speed and path." (*Id*. at 12-13.) While an expert may consider a party's deposition in forming his opinion, that opinion ultimately must be based on scientific, technical or specialized knowledge. *See* Fed. R. Evid. 702(a); *Pineda*, 520 F.3d at 244. Rickard's experience in accident reconstruction gave him specialized knowledge, but his proposed testimony was not based on that knowledge. Rather, Rickard simply parroted Senese's account of the accident. In short, Rickard's testimony about how the accident occurred does not meet Rule 702's requirement of reliability because that testimony was based on "subjective belief," and not on "the methods and procedures of science." *See Calhoun,* 350 F.3d at 321.

Rickard's testimony also does not meet Rule 702's third requirement: His testimony would not have helped the jury to understand the evidence or to determine a fact in issue. *See* Fed. R. Evid. 702(a). At most, Rickard's opinions reflect his belief that Senese was telling the

---

Excerpts from the Pennsylvania Driver's Manual would not have been helpful to the jury, as required under Rule 702.

truth. But Senese testified at trial, and it was the jury's province to determine his credibility. *See Bhaya v. Westinghouse Elec. Corp.*, 832 F.2d 258, 262 (3d Cir. 1987); *see also United States v. Schneider*, Crim. A. No. 10-29, 2010 WL 3734055, at *6 (E.D. Pa. Sept. 22, 2010) (holding that expert testimony was inadmissible in part because its "practical effect" was simply to bolster a witness's credibility).

### 2. Statements about response time and centrifugal force

Only two statements in Rickard's reports were arguably based on specialized knowledge, as required by Rule 702. These statements were: (1) that 1.6 seconds usually elapse between when a driver perceives a stimulus on the road and when he reacts to the stimulus by accelerating or steering; and (2) that centrifugal forces likely forced Senese's van to make a wider left turn than he had expected. (First Rickard Report at 8, 13; Second Rickard Report at 3.) The Court excluded these statements with the rest of Rickard's testimony because it found they were not helpful to the jury, as required by Rule 702. It is common knowledge that there is a slight delay between when a driver perceives a stimulus and when he reacts to it. It is also common knowledge that a heavy van, such as the one that Senese was driving, is difficult to control. Because the average juror would know these facts, Rickard's statements were unhelpful and therefore inadmissible under Rule 702. *See* Fed. R. Evid. 702 advisory committee's note (noting that expert testimony should not be admitted if the "untrained layman" could determine the issue without an expert's help).

An independent basis for denying Senese's motion with respect to these statements is that their exclusion did not prejudice Senese. *See Maylie*, 791 F. Supp. at 480. As noted above, the jury found that the unidentified motorist was negligent, but that the motorist's negligence was not a factual cause of Senese's injury. Based on the Court's instruction to the jury on factual

causation, the jury found that the accident would have occurred even in the absence of the unidentified motorist's negligence. (Trial Tr. at 146.) Rickard declares that his testimony about reaction time would have helped to establish causation by demonstrating that Senese accelerated in response to the unidentified motorist's negligent driving. (Pl.'s Mot. Ex. G [Rickard Decl.] at ¶¶ 16-20.] If Senese viewed the unidentified motorist for one or two seconds before accelerating, Rickard argues, he must have seen the motorist's negligent driving, and therefore Senese's acceleration must have been a response to that negligent driving. (*Id.*) However, the jury heard Senese's testimony that he viewed the unidentified motorist for one or two seconds, and the jury still did not believe that the motorist's negligence was a factual cause of Senese's accident. (Trial Tr. at 79-80.) Testimony by an expert about the average reaction time would not have changed the jury's conclusion.

Likewise, Rickard's proposed testimony about centrifugal force would not have affected the jury's verdict. Rickard's argument to the contrary confuses factual causation and contributory negligence. (*See* Rickard Decl. ¶ 21.) Indeed, Rickard's testimony that Senese's van was "beyond his control due to the operation of centrifugal forces" is consistent with the jury's finding that the accident would have happened even in the absence of any negligence by the unidentified motorist. (*Id.*) In sum, the exclusion of Rickard's testimony about reaction time and centrifugal force did not prejudice Senese and does not support the grant of a new trial.

        3.    Daubert *hearing*

An evidentiary hearing to determine the admissibility of Rickard's testimony was not necessary. The Third Circuit has upheld a district court's decision not to hold a *Daubert* hearing where the basis for the expert's testimony was clear and the record was adequate to support a determination on admissibility. *Oddi v. Ford Motor Co.*, 234 F.3d 136, 154-55 (3d Cir. 2000).

Both of those circumstances are true here. The record, which consisted of two reports by Rickard, was adequate for the Court to decide admissibility. In addition, the basis for Rickard's testimony was clear because Rickard listed his sources. (First Rickard Report at 1-2; Second Rickard Report at 1.) The Court had sufficient information to decide that Rickard lacked "good grounds" for most of the conclusions in his reports, and that the remainder of his testimony would not be helpful to the jury. *See Daubert*, 509 U.S. at 590. Trial courts enjoy "significant discretion" in choosing a procedure to determine the admissibility of evidence. *Oddi*, 234 F.3d at 154. The Court acted within its discretion in declining to hold a *Daubert* hearing regarding Rickard's testimony.

B.     **Limitation on Senese's Testimony About Speed**

Senese argues that the Court's decision to limit his testimony about the speed of the unidentified motorist was erroneous. The Court permitted Senese to testify that the unidentified motorist was driving at a high rate of speed and accelerating, but prohibited him from testifying as to the car's mileage per hour. Federal Rule of Evidence 701 provides, "If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is: (a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." The Court concluded that Senese had no rational basis to calculate the exact speed at which the unidentified motorist was driving. By his own account, Senese was driving at five miles per hour, and the unidentified motorist was driving toward him. (J. Pretrial Stip.*,* Pl.'s Proposed Facts ¶¶ 16-20.) Senese could not have used his own speed as a comparative basis for judging the unidentified motorist's speed. Because Senese's proposed

9

testimony about the unidentified motorist's exact speed was not rationally based on Senese's perception, the Court acted within its discretion in excluding that testimony.

An independent basis for denying Senese's motion is that the limitation on his testimony about speed was not prejudicial. In violation of the Court's Order, Senese testified that the unidentified motorist was driving "well above 35 miles an hour." (Trial Tr. at 80.) Defense counsel did not object. (*Id.*) Senese stated in his deposition that the unidentified motorist was driving at 60 miles per hour, and perhaps he would have repeated that statement at trial if the Court had not limited his testimony. (Def.'s Mot. to Preclude Lay Opinion Testimony Ex. B [Senese Dep.] at 142.) However, Senese's testimony that the unidentified motorist was driving "well above 35 miles per hour, accelerating at me like crazy," if believed by the jury, was sufficient to establish the unidentified motorist's negligence. (Trial Tr. at 80.) Indeed, the jury found that the unidentified motorist was negligent. Because Senese disregarded the Court's Order limiting his testimony about speed, and because the jury found that the unidentified motorist was negligent, any error by the Court in limiting Senese's testimony was not prejudicial.

### C. Consistency of the Verdict

Senese argues that he is entitled to a new trial because the jury's answers to special interrogatories were inconsistent. The Court submitted to the jury a special verdict form with six questions. *See* Fed. R. Civ. P. 49(a). As noted above, the jury found that there was an unidentified motorist, and that the unidentified motorist was negligent. However, the jury also found that the unidentified motorist's negligence was not a factual cause of any harm to Senese. Senese argues that these answers were inconsistent with one another given the evidence presented at trial. However, a Court must follow the jury's answers to special interrogatories if those answers can be harmonized. *See Bradford-White Corp. v. Ernst & Whinney*, 872 F.2d

1153, 1159 (3d. Cir. 1989) ("[I]t is well established that a verdict must be molded consistently with a jury's answers to special interrogatories when there is any view of the case which reconciles the various answers."); *see also Samson Fire Sales, Inc. v. Oaks*, 55 F. App'x 87, 89 (3d Cir. 2003).

The jury's answers to questions on the special verdict form were consistent with one another. The jury may have decided that Senese accelerated into his turn in response to the unidentified motorist's presence at the next intersection, and not in response to the unidentified motorist's negligent driving. Or perhaps the jury decided that Senese was speeding and lost control of his vehicle, and that the negligent driving of the unidentified motorist was an unrelated event. Senese had the burden of establishing causation, and it was well within the jury's role as factfinder to determine that he did not carry his burden. Because the jury's answers on the special verdict form were consistent, those answers do not support the grant of a new trial.

### III.  CONCLUSION

The Court did not err in excluding most of Rickard's expert testimony or in limiting Senese's testimony about the speed of the unidentified motorist. In any event, these evidentiary rulings did not prejudice Senese. Furthermore, the jury's answers to special interrogatories were not inconsistent. Senese's motion for a new trial is therefore denied. An Order consistent with this Memorandum will be docketed separately.